IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA          :
                                  :
        v.                        :        4:CR-07-389
                                  :        (JUDGE VANASKIE)
DOROTHY ROBINSON                  :
                                  :


MEMORANDUM

On August 14, 2008, a Third Superseding Indictment was returned in this matter,

charging Defendant Dorothy Robinson and a number of co-defendants with conspiracy to

distribute and possess with the intent to distribute more than fifty (50) grams of cocaine

base, and more than five hundred (500) grams of cocaine, as well as marijuana in a

protected zone (Count One), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1) and 860(a).

(Dkt. Entry 435.)[1]  On September 4, 2008, Defendant Robinson entered a not guilty plea to

the Third Superseding Indictment.  (Dkt. Entry 497.)  On August 28, 2009, shortly before the

commencement of Ms. Robinson's trial, the government filed an Information of Prior

Convictions, reporting that she had previously twice pled guilty to felony drug charges on

_____

[1] For the convenience of the reader of this Memorandum opinion in electronic format,
hyperlinks to the Court's record and to authority cited herein have been inserted.  The Court
accepts no responsibility for, and does not endorse, any product, organization, or content at
any hyperlinked site, or at any site to which that site might be linked.  The Court accepts no
responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a
hyperlink ceases to work or directs the user to some other site does not affect the opinion of
the Court. Citations to page numbers refer to the page number of the document on the
CM/ECF electronic record.

separate occasions in 1983 and 1993. (Dkt. Entry 911); See 21 U.S.C. § 851(a). As a result, Ms. Robinson faced a mandatory life prison term if convicted. See 21 U.S.C. § 841(b)(1)(A) ("If any person commits a violation of this subparagraph or of section 849, 859, 860, or 861 of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release[.]" (emphasis added); United States v. Sacksith, 248 Fed. App'x 430, 431 (3d Cir. 2007) (affirming defendant's mandatory life sentence based on two prior felony drug convictions and the district court's denial of his motion to withdraw guilty plea).

Pursuant to Ms. Robinson's waiver of her right to a jury trial, a bench trial commenced on September 1, 2009. On the third day of trial, September 3, 2009, Robinson withdrew her not guilty plea and pled guilty pursuant to a plea agreement to Count 21 of the Third Superseding Indictment for distributing cocaine base on August 1, 2007, in a protected zone in violation of 21 U.S.C. §§ 841(a)(1) and 860(a). (Dkt. Entry 940.) The plea agreement, entered into under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, calls for a prison term of 18 years.

Presently pending before this Court is Robinson's Motion to Withdraw Guilty Plea. (Dkt. Entry 1065.) For the reasons that follow, her motion will be denied.

I. BACKGROUND

On September 1, 2009, at Defendant Robinson's first day of trial, Mr. Lewis "Guy"

Tedesco ("Tedesco") was called on behalf of the government to testify. (Trial Tr. vol. 1, 9, Sept. 1, 2009; Dkt. Entry 953.) Tedesco, a confidential informant, testified that on August 1, 2007, he met with Pennsylvania State Trooper Dennis Haines in order to participate in a controlled purchase at a residence located at 725 High Street, Williamsport, Pennsylvania. (Id. at 24.) Tedesco and Trooper Haines met about two blocks from her residence, in the parking lot of a hospital, where Trooper Haines searched Tedesco, then gave him $200 to buy crack cocaine. (Id. at 25.)

Tedesco proceeded to 725 High Street, where co-defendant James Ross answered the front door. (Id.) While the front door was being opened, Tedesco saw Defendant Robinson and co-defendant Earl Sampson exiting a bedroom located on the first floor. (Id. at 26.) Tedesco informed Defendant Robinson that he was there to purchase an eight-ball of crack,[2] and she invited him to the kitchen located in the rear of the residence. (Id.) In the kitchen, Tedesco gave Defendant Robinson $200, and in return she produced a plastic bag with crack cocaine. (Id. at 27, 29.) Upon receipt of the crack cocaine, Tedesco exited the house and met with Trooper Haines in the nearby hospital parking lot. (Id. at 27-8.) Tedesco turned the drugs over to Trooper Haines, who conducted one final search of Tedesco. (Id. at 28.) The August 1, 2007 transaction formed the predicate for Count 21 of the Third Superseding Indictment, the charge to which Ms. Robinson pled guilty.

---

[2] An eight-ball is the equivalent of 3.5 grams. See (Trial Tr. vol. 2, 129, Sept. 2, 2009; Dkt. Entry 950.)

Additionally, Special Drug Enforcement Agent David Crowley ("Agent Crowley") testified that he conducted surveillance of the controlled buy on August 1, 2007. Agent Crowley stated that, in conjunction with members of the Williamsport Police Department and Pennsylvania State Troopers, an undercover buy between Tedesco and Defendant Robinson was coordinated. (Id. at 60.) Agent Crowley teamed up with police officer Ken Mains to conduct surveillance, positioning themselves across the street from the residence in the hospital parking lot. (Id. at 61-2.) Agent Crowley and Mains were located directly across from 725 High Street, in clear view of Defendant Robinson's front door from the hospital parking lot. (Id. at 62, 64.) Officer Mains, from the vantage point of the parking lot, videotaped the exterior of the home. (Id. at 64.) The videotape ran from 1:12 p.m. and concluded at 1:30 p.m., with Tedesco exiting 725 High Street. He was accompanied to the door by Ms. Robinson. (Id. at 67, 82.)

A number of other government witnesses testified as to Robinson's drug dealing enterprise. Leanika Johnson, Robinson's daughter, testified that she had sold crack cocaine on behalf of her mother on approximately three occasions in 1997, when she was seventeen years old. (Id. at 102-03.) Sherri Wise, another confidential informant, testified that she made two controlled purchases of crack cocaine from Robinson, which were overseen by Trooper Haines. One controlled purchase occurred at 725 High Street, (id. at 176), and another controlled purchase was made from Robinson on July 30, 2007, at 828

4

Memorial Avenue, Williamsport, Pennsylvania. (Id. at 179.)  Teresa Wood, Sherri Wise's

sister, testified that she purchased powder cocaine and crack cocaine from Robinson and

Earl Sampson.  (Id. at 212-14.)  Karen Sampson, another government witness, testified that

she used her Social Security Disability payments to buy crack cocaine from Robinson.  (Id.

at 228-31.)

Upon the conclusion of Ms. Sampson's testimony, at the end of the first trial day, the

Court cleared the courtroom in order to allow Ms. Robinson to address the Court.  (Id. at

260.)  She stated:

> I can't do this, [y]our Honor. I guess this trial should go on without me
> because [defense counsel] Mr. O'Brien totally has ignored me. He's sitting
> over here, he's falling asleep, he's drifting off, so I don't even think he's really
> paying attention to what's going on here.  I don't want to come back into the
> courtroom tomorrow with Mr. O'Brien sitting in here refusing to hear anything
> that I'm saying. And there's no objections, there's nothing, there's nothing
> entered into exhibit . . . . There's not been no objections, there's not been any
> questions that I've asked him to ask. I can't -- I just don't -- I refuse to come
> back to the courtroom tomorrow and sit here and go through the same thing
> all over all day long. I would just probably resume to -- or to just be not here
> at all and let the trial just go on without me, because I'm not getting across to
> my lawyer.  He's tired, he's falling asleep sitting right here . . . . And I'm saying
> we have been to -- been in the court several times about not filing motions
> and me arguing and I'm not satisfied because this is not just something that's
> just -- that's not serious. And I feel like he's not taking it as serious as I feel
> like he should be taking it.

(Id. at 260, 263, 268.)  In response, the Court noted that Mr. O'Brien had not been seen

sleeping and that it was evident that he had "paid close attention" to the testimony as it was

presented.  The Court also observed that there was no objective basis for finding the

5

representation of defense counsel to be inadequate. Ms. Robinson, however, was accorded the opportunity to cross-examine witnesses after defense counsel finished his questioning.

At the second day of trial, Renee Erb testified that she saw Robinson provide crack cocaine to Earl Sampson at 725 High Street. (Trial Tr. vol. 2, 11-2, Sept. 2, 2009; Dkt. Entry 950.) Tony Smith, a Social Security Disability recipient who moved into 725 High Street in January, 2007, testified that Robinson would take him to the bank to cash his check, and then Smith would retain $50.00 and submit the remaining amount of money to her in order to pay off his crack cocaine debt owed to Mr. Sampson. (Id. at 59-60.) Smith also stated that he directly bought crack cocaine from Ms. Robinson on two occasions. (Id. at 61.)

Dartanine Ransom testified that he supplied crack cocaine to Joy Schultz ("Schultz"), and Ms. Robinson would then give him checks to pay for the drugs that Schultz purchased. (Id. at 116-18.) Schultz testified that Curtis Mitchell, Robinson's son, provided her with powder cocaine and crack cocaine over 500 times, and that she paid Robinson to cover her "running tab" with him. (Id. at 129-32.) Schultz further testified that she spent approximately $150,000 buying drugs from Curtis Mitchell, that she bought powder cocaine and crack cocaine from Dartanine Ransom "hundreds" of times, spending roughly $100,000, and she bought crack cocaine from Shannon Mitchell, another Robinson child, about 30

times.  (Id. at 131-32.)  Schultz testified that whether she was buying drugs from Curtis Mitchell, Shannon Mitchell, or Dartanine Ransom, she would give Robinson the money and Robinson would then "take care of [Schultz's drug] tabs."  (Id. at 131-36.)  Schultz also testified that she purchased crack cocaine from Darius Simmons hundreds of times, and either she would pay Simmons directly or Robinson would pay Simmons.  (Id. at 137.)  Schultz also bought large quantities of crack cocaine from Dominic Williams, an individual known as "Black," another person whom Robinson paid on behalf of Schultz.  (Id. at 139.)

On the third day of trial, Kamilah Short and Darrell Harris testified.  Short, Defendant's former cell mate at the Columbia County Prison, testified that the two discussed Robinson's drug trafficking deals.  (Trial Tr. vol 3, 19, Sept. 3, 2009; Dkt. Entry 954.)  According to Short, Robinson stated that she hid drugs in stuffed animals, provided crack cocaine to Schultz, and purchased drugs from her nephew, Lynn Hooper.  Short also testified that Robinson told her that Robinson's daughter, Leanika Johnson, sold drugs, that Sherri Wise and Tedesco were confidential informants involved in the present case against Robinson, that Curtis Mitchell sold powder cocaine on Robinson's behalf, and that Earl Sampson was selling drugs for her and living in her house.  (Id. at 20-6.)

Darrell Harris testified that Robinson and her children delivered drugs daily to him and Schultz.  (Id. at 63-6.)  Harris also testified that Robinson managed all of Schultz's finances, paying her bills and drug tabs.  (Id. at 66-7.)

7

At the close of Darrell Harris' testimony, a sidebar conference was held with counsel and Robinson, who accused her attorney of disclosing prospective witness testimony and information to the Assistant United States Attorney.  (Id. at 128-30.)  Robinson complained that her counsel was "not sounding like he's defending me at this point."  (Id. at 129.)  Robinson also stated, before her counsel could caution her to exercise restraint in front of the government's attorney, that her counsel "is telling me I'm guilty, I'm going to be found guilty . . . the Judge is going to find you guilty."  (Id. at 131.)

Defense counsel stated that he never produced anything to the government that he was not required to do so under the law, and that he did mutually exchange witness lists with the government as a professional courtesy.  (Id. at 128.)  The Assistant United States Attorney said that defense counsel had not disclosed anything to him concerning counsel's communication with his client.  (Id. at 130.)  At the close of sidebar, the Court granted a recess.

Upon resuming the trial, the Court noted that "Ms. Robinson is still distraught[,]" and offered her the opportunity to confer with her husband.  She accepted the offer, and met with her husband in an interview room.  (Id.)  Thereafter, the Court was informed that Ms. Robinson had decided to enter a plea of guilty pursuant to a plea agreement.

At the change of plea hearing, the Court instructed Ms. Robinson that an oath was going to be administered that "requires that you answer truthfully each question asked of

you here today." (Plea Hr'g Tr., 3, Sept. 3, 2009; Dkt. Entry 948.) The Court also informed Ms. Robinson that she was free to consult with her counsel at any time. (Id.) When asked if she understood the Court's instructions, Ms. Robinson answered "[y]es." (Id.) All counsel agreed with the Court that Defendant was competent to enter a plea. (Id. at 5.)

The Court then addressed the issue of Robinson's dissatisfaction with counsel and how her plea agreement included a waiver concerning her right to appeal her sentence and conviction, or the right to file a motion pursuant to 28 U.S.C. § 2255. (Id.) The Court explained that it wanted "to make it clear when I said you're waiving your right to raise a [section] 2255 challenge, you're essentially agreeing that this will be a final disposition of this matter and would not be otherwise subject to attack for its validity . . . you are precluded from challenging the validity of your guilty plea and the sentence. Do you understand that?" (Id. at 6.) Robinson responded, "Yes, sir." (Id.) Ms. Robinson also indicated that she understood that, as a result of the waiver of rights to challenge the conviction and entry into a Rule 11(c)(1)(C) plea agreement, the plea agreement, if accepted by the Court, would be a final disposition of the matter. (Id. at 6-7.)

Robinson further acknowledged that she understood that she had the right to continue with the trial to final judgment without pleading guilty, (id. at 7), that she reviewed the plea agreement with her counsel before signing it, and that she satisfactorily understood the terms and conditions contained in the plea agreement. (Id. at 8.) The Assistant United

States Attorney summarized the key terms of the plea agreement, including the parties agreement to a sentence of 216 months imprisonment and the waiver of appellate and section 2255 rights. (Id. at 8-16.) Robinson and her counsel confirmed that the government had accurately summarized the key terms of the plea agreement. (Id. at 16.)

Pertaining to Count 21 of the Third Superseding Indictment, the government proffered evidence that would support the finding that Robinson, on August 1, 2007, sold crack cocaine to Tedesco. (Id. at 18.) The Assistant United States Attorney outlined Tedesco's testimony on the first day of trial. That is, Tedesco, working as a confidential informant, bought crack cocaine from Dorothy Robinson at 725 High Street, then exited the residence and met with Trooper Haines. (Id. at 18-9.) Also, the government proffered the video that had been played at trial, as well as Agent Crowley's surveillance of the controlled drug buy executed by Tedesco. (Id. at 19.) Finally, the government would have called to testify Beth Turner to prove that 725 High Street is within one-thousand (1,000) feet of public housing, a protected zone, and a Drug Enforcement Agency chemist to prove that the substance sold to Tedesco was in fact crack cocaine. (Id.) Robinson agreed that the government's recitation of the evidence was accurate and that the government could prove beyond a reasonable doubt that she participated in the distribution of crack cocaine to Tedesco. Robinson then affirmed that her decision to plead guilty was voluntary and made with an understanding that she would receive an 18 year prison sentence if the Court

accepted the agreement.  (Id. at 20.)  Further, when asked what her plea was to Count 21 of the Third Superseding Indictment, Robinson responded, "Guilty."  (Id. at 21.)

The next day, on September 4, 2009, Robinson wrote a letter to the Court, which was construed as a pro se motion to withdraw guilty plea.  (Dkt. Entry 947.)  Her handwritten letter stated that she was really not herself when she pled guilty, and belatedly attributed her plea to her dissatisfaction with her trial attorney.  (Id.)  Robinson alleged that her counsel told her and her family that the Court would find her guilty, and she was willing "to do anything to get away from" defense counsel, including entering a guilty plea.  (Id.)  Robinson claimed, "I did not sell Guy Tedesco those drugs and I lied on myself by saying that I was telling the truth by signing that plea agreement."  (Id.)  Furthermore, Robinson alleged that she was not given sufficient time to consider the plea, and that she "was ganged up on by my lawyer and husband on 9/3/09 in the interview room."  (Id. at 2.)  She also declared that she reluctantly answered the Court's questions at her plea colloquy, that she "lied," and that she was "coerced" into pleading guilty.  (Id.)  Further, Robinson wrote that she wanted to "correct this big mistake" and continue with trial.  (Id. at 2-3.)  In concluding her letter, Robinson stated that she was distraught, exercised poor judgment in making "a wrong decision," was a "total wreck" on September 3, 2009, and was on the "verge" of having a "nervous breakdown because of this wrongful act."  (Id. at 3.)

In a type written letter dated September 6, 2009, Robinson asserted that she was

"very distraught" and that she was coerced by her husband and attorney to enter into the plea. (Dkt. Entry 949.) Robinson claimed that, "[t]he only reason I pled guilty is because I was tired of my attorney hammering me about I was going to get found guilty." (Id.) She proceeded to write that she "made a wrong decision and I did not tell the truth about selling drugs to the witness on count twenty one of the indictment." (Id.)

> The remainder of the letter, in pertinent part, states:
>
> I told the courts truth but this was really not my truth. My truth was that I told a lie on myself. I want to withdraw my plea and proceed to going to trial . . . . I was forced to keep [defense counsel] against my will . . . I was under great duress after fighting with my attorney all during the trial proceedings . . . . Both the courts as well as my attorney has [sic] failed me in bringing justice to my situation. I am praying that this court will withdraw this plea and allow me to present my case as I intended to do from the beginning. I am innocent and still to this day maintain and hold on to my innocence. I made a statement before you about what my attorney said to me and that was he kept telling me that I was going to be found guilty. And you said I should not be telling you this. However, I had already said it . . . perhaps you should have declared . . . a mistrial . . . . I am not just asking the courts to withdraw my plea because of my innocence, I did not have a fair opportunity and there was definitely a great conflict between me and [defense counsel] . . . .

(Id. at 1-2.) Accordingly, Defendant Robinson asked the Court to withdraw her plea of guilty. (Id. at 2.)

On November 13, 2009, Attorney O'Brien filed a brief In support of the pro se motion to withdraw the guilty plea in which he requested leave to withdraw as counsel due to Ms. Robinson's assertions that she had been coerced to enter into the plea agreement. (Def.'s Br. Supp. 5, Dkt. Entry 989.) On November 24, 2009, the Court granted Mr. O'Brien's

request to withdraw as counsel.  Additionally, the Court entered an Order denying the motion for leave to withdraw the guilty plea, without prejudice.  (Dkt. Entry 1007.)  New counsel was then appointed to represent Ms. Robinson.

On January 19, 2010, Robinson, through her current counsel, filed the pending motion to withdraw guilty plea.  (Dkt. Entry 1065.)  Robinson argues that she is not seeking to withdraw her plea on a whim.  (Def.'s Br. Supp. 3-4, Dkt. Entry 1066.)  Moreover, she argues that there is no factual foundation for her plea, that there was substantial discord between herself and trial counsel, and that the government will not be prejudiced if she is permitted to withdraw her guilty plea.

Countering Defendant's arguments, the government claims that Robinson's motion is the latest attempt in a long string of actions intended to manipulate the judicial process, and that she has failed to provide a legitimate reason for the withdrawal of her plea.  (See Gov't's Br. Opp'n Def.'s Mot., Dkt. Entry 1071.)  Further, the government asserts that Robinson's arguments consist of bald assertions, and the government would be prejudiced if she is permitted to withdraw her plea.  (Id. at 14-6.)

On February 10, 2010, oral argument was conducted on Robinson's motion.  At oral argument, Defendant's current counsel made a proffer of evidence that Robinson had told him could be presented if the matter proceeded to trial.  Specifically, counsel represented that he was told by Ms. Robinson that her sons, Curtis Mitchell, Taurance Johnson, and

Shannon Mitchell, would all testify that Robinson was not a drug dealer. (Hr'g Tr. 3, Feb. 12, 2010; Dkt. Entry 1089.) Additionally, Earl Sampson, who was romantically involved with Robinson, would testify that she is not a drug dealer. (Id. at 4.) Moreover, various individuals from the Pennsylvania Parole Office, Pennsylvania Children and Youth, and County Probation employees would be subpoenaed to testify that they never discovered crack cocaine during their visits to Ms. Robinson's residence. (Id. at 4-5.) Also, according to Ms. Robinson, Dominique Haynes, a federal prisoner, would testify that Robinson did not sell drugs to Schultz nor pay Schultz's drug debts. (Id. at 5-6.) Counsel stated that there was a "smaller potential" that Gerard Schultz, Schultz's son, would testify for the defense. Counsel acknowledged, however, that he had not talked to any of the potential witnesses, but was instead relying upon Robinson's assurances. (Id. at 6.)

As to the matter of whether Mr. O'Brien had failed to render effective assistance, Ms. Robinson's new attorney noted that "we're not arguing directly ineffectiveness of counsel as the basis to withdraw the plea . . . ." (Id. at 8.) In this regard, Ms. Robinson's new lawyer stated that he had not identified any potential motions that should have been filed on Robinson's behalf, nor did he believe that it was "unreasonable," given the totality of the record, for Attorney O'Brien to recommend that Robinson plead guilty. (Id. at 10.) Instead, Ms. Robinson was relying upon what she claimed was a deterioration in the attorney-client relationship at trial.

The Court commented upon Ms. Robinson's serial dissatisfaction with her prior attorneys. At first, Federal Public Defender Toni Byrd was appointed as Robinson's counsel. Robinson refused to proceed with Ms. Byrd as counsel. Second, William Ruzzo, Esq. was appointed counsel. She dismissed Mr. Ruzzo as well. Both Attorney Ruzzo and Attorney Byrd are well-respected defense counsel with tremendous experience. Finally, Joseph A. O'Brien, Esq. was appointed as successor counsel. Again, Defendant was not satisfied.

## II. DISCUSSION

### A. Standard to Withdraw Guilty Plea

It is well settled that "once a court accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his whim." United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003) (citing United States v. Brown, 250 F.3d 811, 815 (3d Cir.2001); United States v. Martinez, 785 F.2d 111 (3d Cir.1986)). "Rather, []a defendant must have a 'fair and just reason' for withdrawing a plea of guilty." Id. (citing Fed. R. Cr. P. 32(e);[3] Brown, 250 F.3d at 815). Whether to allow the withdrawal of a guilty plea is committed to the sound discretion of the trial court. Jones, 336 F.3d at 252.

Three factors govern consideration of a request to withdraw a guilty plea: (1) whether

---

[3] Rule 32(e) of the Federal Rules of Criminal Procedure was amended, and currently is Rule 11(d). Fed. R. Crim. P. 11(d). Rule 11(d)(2)(B) states that a defendant may withdraw a plea of guilty "after the court accepts the plea, but before it imposes sentence if[] the defendant can show a fair and just reason for requesting the withdraw."

the defendant asserts innocence; (2) the strength of the reasons for withdrawing the plea; and (3) prejudice to the government by the withdrawal.  Brown, 250 F.3d at 815; United States v. Huff, 873 F.2d 709, 711 (3d Cir.1989). "The burden of demonstrating a 'fair and just' reason falls on the defendant, and that burden is substantial."  Jones, 336 F.3d at 252 (citing United States v. Hyde, 520 U.S. 670, 676-77 (1997); United States v. Isaac, 141 F.3d 477, 485 (3d Cir.1998)). "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." Brown, 250 F.3d at 815 (quoting United States v. Jones, 979 F.2d 317, 318 (3d Cir.1992), superseded by statute on other grounds as stated in, United States v. Roberson, 194 F.3d 408, 417 (3d Cir.1999)).

B. Defendant Robinson's Motion to Withdraw Guilty Plea

With respect to the first factor to assess in addressing a motion to withdraw a guilty plea, the defendant's proclamation of innocence, "[b]ald assertions of innocence are insufficient . . . ."  Jones, 336 F.3d at 252.  Instead, "'[a]ssertions of innocence must be buttressed by facts in the record that support a claimed defense.'" Id. (quoting Brown, 250 F.3d at 818; citing United States v. Salgado-Ocampo, 159 F.3d 322, 326 (7th Cir. 1998)). Further, "[o]nce a defendant has pleaded guilty, he 'must then not only reassert innocence, but give sufficient reasons to explain why contradictory positions were taken before the

16

district court and why permission should be given to withdraw the guilty plea and reclaim the right to trial.'" Id. (quoting Jones, 979 F.2d at 318).

In Jones, the Third Circuit affirmed the district court's holding that the defendant did not meaningfully assert his innocence. Id. at 253. Rather, the defendant merely "made a blanket assertion of innocence at the . . . [withdrawal] hearing, but offered no credible facts in support of his claim." Id. Moreover, defense counsel conceded on the record that they "'submitted no testimonial proof' on the issue of whether [defendant] had meaningfully asserted his innocence." Id. The Third Circuit concluded that the "District Court correctly determined that [defendant's] argument 'contradicts the Brown standard that requires the defendant to place facts in the record' in support of a claimed defense." Id. The Court of Appeals additionally observed that the "[defendant failed to] provide a convincing reason for having taken contradictory positions at the December 4, 2000 [guilty plea] and May 22, 2001 [motion to withdraw guilty plea] hearings." Id. At the guilty plea hearing, defendant agreed with the recitation of the material facts pertaining to the case. Id. Next, defendant denied those same underlying facts of his offense at the withdrawal hearing, "but did not explain why his position had changed so markedly. He merely alleged that his prior counsel had told him to agree to the facts at the December hearing." Id. The appellate court concluded that defendant did not meaningfully assert his innocence. Id.

Robinson relies on her assertions of innocence made in the letters addressed to the

Court after her plea. Specifically, Defendant Robinson submits that she lied to the Court and "lied on [herself]" when she admitted to selling crack cocaine to Tedesco. This is nothing but a bald assertion of innocence that does not suffice to warrant withdrawal of her plea. The government presented substantial evidence at the three day trial that indicated Robinson was directly involved in the distribution of crack cocaine. Indeed, Agent Crowley and Tedesco testified concerning the controlled purchase of crack cocaine from Robinson. There is video evidence of Robinson's presence inside the residence at 725 High Street at the time of the transaction. There is no evidence that counters Tedesco's account of the deal. Robinson vaguely claims that she could present evidence that calls into question Tedesco's credibility, and she states that she did not participate in the transaction, but there is no credible showing that refutes Tedesco's testimony, corroborated by the controlled nature of this transaction.

Robinson alleges that her sons and boyfriend (all co-defendants)[4] would testify that she did not distribute crack cocaine, but defense counsel never interviewed any of the

_____

[4] Ms. Robinson's sons have entered guilty pleas to drug charges related to this matter. Shannon Mitchell's plea agreement was not conditioned upon his cooperation with the government. (See United States v. Curtis Mitchell, Case No. 4:09-CR-252, Dkt. Entry 9; United States v. Shannon Mitchell, Case No. 4:07-CR-389-8. Dkt. Entry 786; United States v. Taurance Johnson, Case. No. 4:07-CR-389-5, Dkt. Entry 893.) At the change of plea hearing for the present motion for leave to withdraw guilty plea, the Assistant United States Attorney represented to the Court that "Curtis Mitchell, Taurance Johnson, [and] Shannon Mitchell . . . have indicated they will not testify against [Defendant Robinson] . . . but they would testify against [co-defendant] Earl [Sampson]." ( Hr'g Tr. 16:2-6; Dkt. Entry 1089.)

supposed defense witnesses. No credible proffer of exculpatory evidence has been made that counters the substantial testimony presented in the first three days of the trial that plainly indicated that Ms. Robinson played a significant role in an extensive drug conspiracy. Moreover, there is absolutely no evidence that refutes the controlled transaction that formed the basis for the charge to which Ms. Robinson entered her guilty plea.

Robinson's personal proffer, unsubstantiated by any witness statements, is unpersuasive, especially when considered in the context of the government's evidence presented at trial. Not only did Tedesco testify that he made a controlled purchase of crack cocaine from Ms. Robinson, but Agent Crowley corroborated Tedesco's testimony as well. Further, numerous witnesses testified as to Robinson's involvement in distributing crack cocaine.

Leanika Johnson testified that she sold crack cocaine for her mother, Defendant Robinson. Sherri Wise testified that she made a controlled purchase on two occasions from Robinson. Teresa Wood, Karen Sampson, and Tony Smith all testified that they had purchased crack cocaine from Ms. Robinson.

Additionally, Dartanine Ransom testified that he provided crack cocaine to Schultz, and Ms. Robinson would pay for Schultz's drug tab. Schultz admitted that Defendant Robinson paid her various crack cocaine tabs. Also, Darrel Harris and Kamilah Short testified as to Robinson's drug trafficking. This testimony contradicts Robinson's bald

representations.

In United States v. Wilder, 204 Fed. App'x. 146, 147 (3d Cir. 2006), our Court of Appeals affirmed the district court's refusal to permit the withdrawal of a guilty plea where, under the assertion of innocence factor, defendant presented some evidence from his prior attorney "to the effect that '[h]is case really wasn't that bad,' and that the attorney would not have advised him to plead if he had known that [defendant] would be classified as a career offender." As in this case, the defendant "did not offer any evidence beyond his own statements to show that he was innocent of the charges," but instead claimed that the plea had been induced by counsel. Our Court of Appeals observed that the "mere allegation that he waived his constitutional rights based entirely on his prior counsel's advice is not enough to explain why his position changed so drastically." Id. (citing Jones, 336 F.3d at 253).

Undeniably, there was a substantial factual foundation for Robinson's plea. As her counsel, Attorney O'Brien had the responsibility to provide her with prudent advice in terms of whether to enter a guilty plea. Ms. Robinson was facing a prison term of life if she were convicted. Ms. Robinson's new attorney acknowledged that the advice provided by Mr. O'Brien was not unreasonable. That Ms. Robinson soon regretted taking her lawyer's advice provides an insufficient reason to allow her to withdraw a plea that was based upon a sworn admission that she had indeed sold crack cocaine to Tedesco as charged in Count 21. As stated in United States v. Maher, 108 F.3d 1513, 1530 (2d Cir. 1997), which

affirmed the denial of motions to withdraw guilty pleas entered two weeks after the trial commenced, "self-inculpatory statements . . . made under oath at [a] plea allocution 'carry a strong presumption of verity,' and the court, in reviewing the belated claims of innocence, must draw all permissible inferences in favor of the government and against the defendant, especially when, as here, the defendant has gone to trial, heard most of the government's evidence, and then pleaded guilty, describing his wrongdoing and acknowledging that he could not effectively defend against that evidence."

Nor does the alleged deterioration in the attorney-client relationship afford a sufficient reason for allowing the withdrawal of the guilty pleas.  Ms. Robinson has found fault with each lawyer who represented her.  The dissatisfaction with Mr. O'Brien that she expressed during trial was the same old tune.  This litigation cannot go on indefinitely, and Robinson has failed to show any factually or legally cognizable basis for dissatisfaction with Attorney O'Brien.  Unable to change counsel in the middle of a trial, it now appears that Robinson entered a plea of guilty with the intent to withdraw it the next day so that she could obtain yet another lawyer.  Such a tactic cannot be sanctioned by granting leave to withdraw a plea that had a substantial factual foundation unshaken by anything presented on Ms. Robinson's behalf.

In a similar case, Chief Judge Brown refused to allow the withdrawal of a guilty plea, explaining:

21

the new "facts" [defendant] Ms. Rivera offers into evidence are, in sum, that she lied to the Court over twenty times during the Plea Hearing because: (1) [Defense counsel] Mr. Moran told her to do so; (2) Ms. Rivera felt "pressured" by Mr. Moran; and (3) Ms. Rivera felt "overwhelmed" by the situation. As noted above, however, the Court finds Ms. Rivera's attempt to reconcile her conflicting testimony not credible. Conversely, the Court finds Ms. Rivera's unequivocal admission of guilt to Misprision of Felony at the Plea Hearing credible. (Id.) In light of those findings, the record in this case indicates that Ms. Rivera has provided nothing more than a "bald assertion" of innocence, which is unsupported by any credible facts, and has not been sufficiently reconciled with her testimony at the Plea Hearing. As such, she has failed to satisfy the first element of the Jones analysis.

United States v. Rivera, Crim. No. 08-192, 2009 WL 1140448, at *9 (D.N.J. 2009).

As in Rivera, Robinson's attempt to now claim innocence is not credible. Nor is her complaint that her counsel advised her that she was going to be found guilty and that she felt pressured by Attorney O'Brien and her husband to plead guilty a sufficiently strong reason to support withdrawal of the plea.

Under the Pennsylvania Rules of Professional Conduct, "a lawyer shall exercise independent professional judgment and render candid advice." Rule 2.1. That is exactly what Attorney O'Brien did. Further, Defendant Robinson indicated that she was satisfied with her counsel at the change of plea hearing, and earlier acknowledged that counsel was not deficient. Attorney O'Brien was executing his ethical and professional obligations.

As for her husband, Defendant has failed to present any evidence that he forced her to plead guilty. Nonetheless, Robinson's claim of pressure applied by her husband affords an insufficient basis for granting leave to withdraw a plea of guilty. See United States v.

22

Allen, 668 F.Supp. 969, 974-75 (W.D. Pa. 1987) (denying motion to withdraw finding where fiance's "tearful entreat[y]" to plead did not suggest defendant was under emotional distress). Indeed, Defendant Robinson has merely had a change of mind, and she has not carried her substantial burden.

Under the third factor of Jones, at oral argument defense counsel agreed that "there's some prejudice to the government." (Hr'g Tr. 12-3; Dkt. Entry 1089.) The government, however, would be subject to substantial prejudice. The government has expended significant resources to prepare for and try the three day bench trial. A number of witnesses are co-defendants who do not wish to testify a second time against Defendant Robinson, and some have already been sentenced. See Gov't of Virgin Islands v. Berry, 631 F.2d 214, 221 (3d Cir. 1980) (finding prejudice stating that the "government is unlikely to be able to proceed against [defendant] now with the same assemblage of witnesses and testimony as it could have [previously]"); Cf. United States v. De Cavalcante, 449 F.2d 139, 141 (3d Cir. 1971) (per curiam) (prejudice when witnesses were no longer able or willing to testify on government's behalf), cert. denied, 404 U.S. 1039 (1972). Three of Robinson's proposed witnesses, Curtis Mitchell, Shannon Mitchell, and Taurance Johnson, are scheduled to testify against co-defendant Earl Sampson, whose trial is scheduled to commence in the near future. If their mother, Ms. Robinson, is granted a new trial, it is uncertain whether these individuals would agree to testify against Sampson. Additionally,

Sampson's trial would have to be rescheduled.  See United States v. Trott, 779 F.2d 912, 915 (3d Cir. 1985) (noting in a controlled substance violations case that the government "would be prejudiced by having to reschedule trial").

Defendant Robinson observed the government's case for three days.  The Sixth Circuit Court of Appeals, like our Circuit, considers prejudice to the government as a factor pertaining to a defendant's motion to withdraw guilty plea.  United States v. Osorio, 7 F.3d 236, *6 (6th Cir. 1993) (per curiam) (Table of Decisions).  In Osorio, the defendant pled guilty on the same day that trial was to commence.  Id.  Under Sixth Circuit precedent, because the district court did not address the prejudice to the government factor, the court of appeals was required to "assume some prejudice."  Id.  The Osorio court reasoned that, "where defendant pled guilty on the very day that the trial was scheduled to begin and the government had already gone to the trouble of assembling its witnesses as well as potential jurors for trial[,]" the "assumption of a minimal amount of prejudice to the government [is] justified."  Id.  Accord United States v. Crowley, 529 F.2d 1066, 1072 (3d Cir. 1976) (concluding prejudice to the government when defendant entered plea on day of trial "when jurors, witnesses and court personnel had been assembled for the trial").  Clearly, Robinson's prejudice to the government is much more egregious than that of the defendants in Osorio and Crowley, as the government put on its case for three days.  Now, Robinson would have the Court grant her the unfair advantage of a second bite at the apple, after

having perverted justice by manipulating the guilty plea that was voluntarily entered into after she was confronted with the overpowering evidence of her criminal misconduct. Such a result is patently unwarranted.

## III. CONCLUSION

For the reasons set forth above, Defendant Robinson has failed to carry her substantial burden under all three factors announced in <u>Jones</u>. Accordingly, her motion to withdraw the plea of guilty will be denied. An appropriate order follows.

s/ Thomas I. Vanaskie_____
Thomas I. Vanaskie
United States Circuit Judge
Sitting by Designation on the District Court

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :
                                :
        v.                      :        4:CR-07-389
                                :        (JUDGE VANASKIE)
DOROTHY ROBINSON                :
                                :

<u>ORDER</u>

NOW, THIS 2nd DAY OF JUNE, 2010, for the reasons set forth in the foregoing

Memorandum, IT IS HEREBY ORDERED THAT Defendant Robinson's Motion to Withdraw

Plea of Guilty (Dkt. Entry 1065) is DENIED.

s/ Thomas I. Vanaskie_____
Thomas I. Vanaskie
United States Circuit Judge
Sitting by Designation on the District Court