UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | NO. 4:07-CR-389-10 |
| | : | |
| v. | : | (JUDGE MARIANI) |
| | : | |
| DOROTHY ROBINSON, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Presently before the Court are several documents filed by Defendant Dorothy

Robinson seeking release due to the Covid-19 pandemic: the "Motion to Petition the Courts

to be Released to Home Confinement Amidst 18 USC 3582(c)(1)(A) Due to Covid-19 Virus

and Pandemic" (Doc. 1498) and supplement thereto (Doc. 1512); and "Motion to

Compassionate Release Under 18 U.S.C. 3582(c)(1)(A)(i) Supplemental Authority Due to

Covid-19 Pandemic" (Doc. 1517) and supplements thereto (Docs. 1529, 1530).  For the

reasons discussed below, the Court will deny the motions.

**II. FACTUAL BACKGROUND**

On September 3, 2009, after several days of trial, Defendant pleaded guilty to

knowingly, intentionally and unlawfully possessing with the intent to distribute cocaine base

(crack) within 1,000 feet of public housing and aiding and abetting in the possession and

distribution of cocaine base (crack) within 1,000 feet of public housing in violation of 21

U.S.C. §§ 841(a) and 860(a). (Doc. 940, Doc. 435).  She entered into a binding plea

agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), which provided for a term of incarceration of 216 months. (Doc. 1392, Ex. 1, Plea Agreement ¶ 11). The plea agreement contained an appeal waiver. (*Id.* ¶ 24).

The Probation Office drafted a presentence report ("PSR") based upon the 2009 Sentencing Guidelines.  (PSR at ¶ 30).  The report revealed that Defendant was responsible for 19.5 kilograms of cocaine base through her operation of several "crack houses" throughout the Williamsport, Pennsylvania area.  (*Id.* at ¶¶ 21, 25).  The Probation Office added enhancements to her offense level for being an organizer or leader of a criminal entity that involved four (4) or more participants and for using a minor to commit the offense. (*Id.* at ¶¶ 35, 36).  She was assigned a criminal history category of II.  The offense level and criminal history category led to a sentencing guideline of life imprisonment.  (*Id.*)  The statutory maximum for Defendant's offense, however, was 60 years or 720 months; therefore, the maximum sentence should could receive was 60 years or 720 months.  (*Id.*)

The court adopted the PSR and accepted the binding plea, sentencing Defendant to 216 months, 6 years of supervised release and a $1,000 fine. (Doc. 1208; Doc. 1240 at 4-5, 15-16).  Defendant's projected release date is July 28, 2023.  (Doc. 1489, Def.'s Br. at 3). Defendant now moves for compassionate release under a section of the First Step Act, 18 U.S.C. § 3582(c).  She seeks immediate release and to serve the remainder of her sentence, nearly three years, on home confinement.

## II. ANALYSIS

Defendant seeks a modification of her sentence pursuant to 18 U.S.C. §

3582(c)(1)(A).  Such a modification may not be granted by the Court except under limited

circumstances.  *Dillon v. United* States, 560 U.S. 817, 825 (2010).  Here, Defendant

requests compassionate release due to the COVID-19 pandemic.

As explained by the Court of Appeals for the Third Circuit, "[t]he First Step Act

empowers criminal defendants to request compassionate release for 'extraordinary and

compelling reasons.' 18 U.S.C. § 3582(c)(1)(A)(i)."  *United States v. Raia*, 954 F.3d 594,

595 (3d Cir. 2020).  *Raia* stressed the need for strict adherence to statutory requirements

despite the emergent nature of the current pandemic.  *Id.* at 595-97.  The Circuit Court

summarized its position as follows:

> We do not mean to minimize the risks that COVID-19 poses in the federal
> prison system . . ..  But the mere existence of COVID-19 in society and the
> possibility that it may spread to a particular prison alone cannot independently
> justify compassionate release, especially considering BOP's statutory role, and
> its extensive and professional efforts to curtail the virus's spread. *See generally*
> Federal Bureau of Prisons, *COVID-19 Action Plan* (Mar. 13, 2020, 3:09 PM),
> https://www.bop.gov/resources/news/20200313_covid19.jsp.   Given  BOP's
> shared desire for a safe and healthy prison environment, we conclude that strict
> compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—
> and critical—importance. And given the Attorney General's directive that BOP
> "prioritize  the  use  of  [its]  various  statutory  authorities  to  grant  home
> confinement  for  inmates  seeking  transfer  in  connection  with  the  ongoing
> COVID-19 pandemic," we anticipate that the statutory requirement will be
> speedily dispatched . . . . Memorandum from Attorney Gen. to Dir., Bureau of
> Prisons 1 (Mar. 26, 2020), https://www.justice.gov/file/1262731/download.

*United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020).

> Pursuant to 18 U.S.C. § 3582(c), the First Step Act provides as follows:
>
> The court may not modify a term of imprisonment once it has been imposed except that –
>
> (1) in any case –
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such reduction.

18 U.S.C. § 3582(c)(1)(A)(i).

This statutory provision indicates that a three-step analysis controls the pending motion for compassionate release. First, the reviewing court must determine if the defendant has exhausted administrative procedures. Second, the court examines whether the defendant has presented extraordinary and compelling reasons to warrant a reduction. Third, if the defendant presents extraordinary and compelling reasons for a reduction in sentence, then the court examines the applicable factors of section 3553(a) to determine whether the Defendant should remain imprisoned despite having extraordinary and compelling reasons warranting relief. The defendant bears the burden of establishing that

she meets the requirements for compassionate release.  *United States v. Ebbers*, 432

F.Supp.3d 421, 426 (S.D.N.Y. Jan. 8, 2020).  The Court will address each step separately.

### A. Administrative procedures

As stated above, a defendant must exhaust administrative remedies before bringing

a motion under section 3582(c) in this Court.  The Third Circuit Court of Appeals has

explained this exhaustion requirement as follows:

> The First Step Act empowers criminal defendants to request compassionate
> release for "extraordinary and compelling reasons."   18 U.S.C. §
> 3582(c)(1)(A)(i).  But before they make such requests, defendants must at least
> ask the Bureau of Prisons (BOP) to do so on their behalf and give the BOP
> thirty days to respond.  *See* § 3582(c)(1)(A).

*Raia*, 954 F.3d at 595 (footnote omitted).

Here, Defendant asserts that she made such a request to the warden and the

warden took no action within thirty (30) days. (Doc. 1498 at 3.)  The Government responds

that

> [t]here is no dispute that Robinson filed a request for compassionate release
> on April 12, 2020. See Gov. Ex. 1. The undersigned has been informed by an
> attorney in the BOP General Counsel's office that the request is still under
> review. Because the 30 day time period to exhaust administrative remedies has
> run, this Court has jurisdiction to hear Robinson's motion.

(Doc. 1504 at 14).  On this record, the administrative procedures are considered exhausted

and Defendant may bring an action in this Court.

## B.  Extraordinary and compelling reasons

In her motion and the supplements thereto, Defendant argues for compassionate release based on the Covid-19 pandemic and her increased vulnerability to the disease due to several medical conditions she has, including, sleep apnea, hypertension/high blood pressure, and morbid obesity.  The Department of Justice's position is that a prisoner who has a medical condition which the Centers for Disease Control and Prevention ("CDC") lists as a risk factor may present an extraordinary and compelling reason for a sentence reduction. (Doc. 1519, Oppo. Br. at 11).  The CDC has a list of such risk factors and included is obesity with a body mass index of 30 or higher.

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept.23, 2020).

Here, the Defendant is obese with a body mass index of 40.58.  (Doc. 1519, Oppo. Br. At 2).  Defendant is thus at risk of severe illness from COVID-19 under the current CDC guidelines.  The Government does not challenge that her medical condition puts her in the category of one who may have an extraordinary and compelling reason for a release from prison to home confinement, if the other factors to be examined weigh in favor of such release.  (*Id.*)  Accordingly, for purposes of the pending motions, the Court will assume that

Defendant has met her burden with regard to this portion of the analysis and proceed to analyze the other relevant factors.[1]

### C. Section 3553(a) Factors

Finally, section 3582(c)(1)(A)(i) directs the Court to consider the factors set forth in section 3553(a). These factors are utilized by the court in imposing a sentence and include such considerations as the nature and circumstances of the offense and the history and characteristics of the defendant; the seriousness of the offense; affording adequate deterrence to criminal conduct; and protection of the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(1) and (2).

Here it is without question that Defendant is serving a sentence for a serous offense. The Defendant entered a binding plea agreement with an agreed upon 216-month term of imprisonment. Had she proceeded through trial she would have faced a mandatory life sentence. *United States v. Robinson*, 4:07cr389, 2010 WL 2265904 at *1 (June 2, 2010). Additionally, the sentence is far below the guideline sentence range of 720 months. (PSR ¶ 71).

In addition to the indictment underlying the instant case, Defendant has a significant criminal history that began when she was nineteen years old and continued practically uninterrupted. The presentence report reveals that the drug trafficking underlying the

---

[1] In her recent supplemental filings, Defendant updates the status of her confinement and medical problems. (Docs. 1529, 1520.) Based on the determination that Defendant has satisfied her burden of showing extraordinary and compelling reasons for reduction of sentence at the second stage of the analysis, further discussion of her medical status is not warranted.

instant case took place, at least partially, while Defendant was on parole after being

sentenced to 30 to 120 months on felony drug charges.  (PSR ¶¶ 44-59).  It appears,

therefore, that Defendant does not have an insignificant risk of re-offending and/or violating

conditions of supervision.

Defendant has not established that she is no longer a danger to the community.  In

light of her past, this is a serious failure.  Defendant ran a wide-reaching drug trafficking

enterprise including three crack houses in the Williamsport, PA area.  She preyed upon

vulnerable members of the community.  At her trial, which proceeded for several days

before she pleaded guilty, a number of government witnesses described the manner in

which Defendant used their government assistance, such as social security disability

payments, to fund her drug business. *Robinson*, 2020 WL 2265904, at *2-*3.  Additionally,

she sold between $750,000 to $800,000 worth of crack cocaine to a widow over a period of

two years after she had offered to help the woman get her finances in order.  (PSR ¶ 19).

She even had her children involved in drug trafficking, including one who was seventeen

years old at the time.  *Id.* ¶ 26.

In the many documents that Defendant has filed, she fails to address the

seriousness of her crimes or the danger she poses to the vulnerable members of the

community with any particularity or illustrate or argue that her stay in prison has made her

less dangerous.  With regard to the 3553(a) factors, Defendant merely states: "As to

[Defendant] being a danger to her community see the court records concerning 3553(a).

She poses no threat or danger, and no flight risk." (Doc. 1512, Def.'s Addendum at 4).

Contrary to Defendant's position, however, a review of the record as set forth above, weighs

in favor of denying her motion. Additionally, her disciplinary record in jail indicates that she

has been involved in a number of infractions, including fights, while imprisoned. (Doc.

1519-1). Thus, the Court's review of the relevant section 3553(a) factors indicates that

granting the relief that Defendant seeks is inappropriate, and her motion for compassionate

release will be denied. See *United States v. Pawlowski*, 967 F.3d 327 (3d Cir. 2020) (where

defendant has medical conditions which put him at a higher risk of severe COVID-19 illness

release is inappropriate if section 3553(a) factors weigh against such release); *United*

*States v. Ramos*, 14CR484, 2020 WL 1685812 *2 (S.D.N.Y. Apr. 7, 2020) (compassionate

release denied where defendant had COVID-19 risk factors, but the 3553(a) factors had not

changed since sentencing and weighed against granting the motion); *United States v.*

*Goode*, No. 14CR810-07, 2020 WL 58272 (Jan. 6, 2020) (explaining that meeting the

requirements for compassionate release makes a defendant eligible for a sentence

modification, such modification is not automatic and may be denied when the section

3553(a) factors override the otherwise extraordinary and compelling circumstances); *Cf.*

*United States v. Rodriguez*, - - F. Supp. 3d - - , 2020 WL 1627331 *10 (E.D. Pa. Apr. 1,

2020) (granting compassionate relief regarding COVID-19 where the defendant had

completed most of his sentence and had "shown rehabilitation in prison. While serving his

sentence [the defendant] took GED classes and earned his GED. In 2019, he completed an

9

apprenticeship in computer operations.  He has also taken classes about fitness and nutrition, anger management, parenting, financial education, decision-making, and hobbies. Furthermore, [the defendant] has had only two infractions in seventeen years of incarceration, one for alcohol and one for having a cell phone.  Neither were violent or raise concerns about recidivism.")

Finally, the Attorney General's Office "looks for whether the defendant has a verifiable re-entry plan that will prevent recidivism and maximize public safety – including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than she would face in her facility." https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (last visited Sept. 23, 2020).  In her filings, Defendant presents only the most rudimentary re-entry plan, indicating that she can live with either her sister or her husband.  (Doc. 1512).  She does not explain how confinement with either would present a lower risk of contracting COVID-19 aside from the fact that she would no longer be in a federal prison.

## IV. Conclusion

For the reasons set forth above, the Court finds that Defendant's motion for compassionate release should be denied.[2]  Defendant has adequately exhausted her

---

[2] Though Defendant specifically seeks relief under 18 U.S.C. § 3582(c)(1)(A) (Doc. 1498 at 1), to the extent she requests that she be released to home confinement, the Court does not have the authority to grant her request in that the determination of an inmate's place of incarceration is committed to the discretion of the BOP director.  *See McKune v. Lile*, 536 U.S. 24, 39 (2002); *Thomaston v. Meyer*, 519 F.

administrative procedures and has a medical condition which puts her at risk to a severe

outcome if she does contract COVID-19, according to the CDC.  However, the factors set

forth in section 3553(a), such as the seriousness of her crime and the potential danger to

the community, weigh in favor of denying the motion.[3]  A separate Order is filed

simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge

---

App'x 118, 119 (3d Cir. 2013); *United States v. Delacruz*, Nos. 3:17-CR-77 and 3:17-CR-201, 2020 WL
3405723, at *4-6 (M.D. Pa. June 19, 2020).  This Court has determined that an inmate requesting to serve
the remainder of his sentence in home confinement is seeking relief as to how his sentence is executed
and the only avenue which would allow him to proceed in federal court is a petition filed under 28 U.S.C. §
2241.  *See, e.g., Delacruz*, 2020 WL 3405723, at *4-6; *United States v. Donahue*, Crim No. 3:11-CR-33,
2020 WL 3001393, at *5 (M.D. Pa. June 4, 2020); *see also United States v. Serfass*, Crim No. 3:15-39,
2020 WL 1874126, at *3 (M.D. Pa. Apr. 15, 2020) (28 U.S.C. § 2241 petition proper vehicle to proceed
where the defendant "seeks relief affecting how her sentence is executed, i.e., serving her sentence
in home confinement as opposed to confinement in prison to which she was sentenced, and not a reduction
or release from her sentence (i.e. a compassionate release)).  Were Defendant to file a § 2241 habeas
petition, she would be required to exhaust administrative remedies before filing the petition in the district
where she is confined.  *See Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012)

[3] In *United States v. Easter*, ---F.3d---, 2020 WL 5525395 (3d Cir. Sept. 15, 2020), the Court of
Appeals for the Third Circuit held that a district court must consider anew all factors set out in 18 U.S.C. §
3553(a) when considering a motion for sentence reduction under the First Step Act.  *Id.* at *1.  Because
*Easter* addresses resentencing pursuant to 18 U.S.C. § 3582 (c)(1)(B) and distinguishes § 3582(c)(1)(A),
the provision at issue here, the decision does not relate to the matter now before this Court .  2020 WL
5525395, at *3-5.  As directed by § 3582(c)(1)(A), the Court has considered "the factors set forth in section
3553(a) to the extent they are applicable."  18 U.S.C. § 3582(c)(1)(A).